# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN KLEIN,<br><br>                              Petitioner,<br><br>v.<br><br>DEAN BORDERS,[1]<br><br>                              Respondent. | Case No.:  17cv0380 JAH (PCL)<br><br>**REPORT AND RECOMMENDATION: (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS; and (2) DENYING REQUEST FOR EVIDENTIARY HEARING** |

## I.    INTRODUCTION

Petitioner Steven Klein, a state prisoner proceeding pro se, has filed a First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet.") challenging his conviction in San Diego Superior Court case no. SCE356942 for driving under the influence.  (Pet., ECF No. 4.)[2]  Klein raises six grounds in the Petition.

The Court has read and considered the Petition, the Answer and Memorandum of Points and Authorities in Support of the Answer ("Answer") [ECF No. 20], the Traverse [ECF No. 22], the lodgments and other documents filed in this case, and the legal

/ / /

---

[1]  The Court **GRANTS** Respondent's request to remove Xavier Becerra as a Respondent.
[2] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing system, except for lodgments.

arguments presented by both parties.  For the reasons discussed below, the Court

**RECOMMENDS** the Petition be **DENIED**.

## II.    FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The state appellate court recounted the facts as follows:

> On December 21, 2015, at 12:40 a.m., two officers of the California Highway Patrol (CHP), Gabriel Vidana and Frank Soto, observed Klein driving west on Interstate 8 at 85 miles per hour.  The officers activated the emergency lights of their patrol car, pursued Klein, observed him weave in and out of traffic, and instructed him to exit the freeway and stop.  After Klein complied with the instruction, Vidana exited the patrol car and approached Klein as Soto remained near the patrol car and observed the interaction.  When Vidana arrived at Klein's vehicle, he smelled an odor of an alcoholic beverage emanating from Klein, saw sweat dripping from his face, and noticed his eyes were red and watery.[FN1]  When Vidana asked
>
> > [FN 1:  According to his direct examination at trial, Soto also observed Klein's red and watery eyes at the time of the arrest. Initially on cross-examination, Soto further testified he had seen "[v]ery little" sweat on Klein's fact and "could smell a little bit" of an odor of alcohol emanating from Klein.  When pressed by Klein's counsel, however, Soto admitted that he had told the prosecutor that he never was close enough to Klein to observe the odor or the sweating.]
>
> Klein whether he had had any drinks earlier in the night, Klein responded, "A few drinks."  Vidana placed Klein under arrest for driving under the influence and advised him he had to submit to a breath or blood test of his blood alcohol level.  Klein opted for the breath test.  At the police station, the Breathalyzer reported Klein's blood alcohol level as 0.091 percent and 0.087 percent at 1:32 a.m. and 1:35 a.m., respectively.  Vidana and a criminalist who worked for the San Diego County Sheriff's Regional Crime Laboratory and had 18 years' experience analyzing blood alcohol level test

results both testified at trial that in their opinion Klein was driving under the influence of alcohol on the night of his arrest.

(Lodgment No. 10 at 2-3.)

## III. **PROCEDURAL BACKGROUND**

On December 23, 2015, the San Diego District Attorney's Office filed a complaint alleging Steven Klein drove a vehicle while under the influence of alcohol, a violation of California Vehicle Code § 23152(a) and (b). (Lodgment No. 2 at 0001-02.) The complaint alleged Klein had suffered two prior convictions for driving under the influence of alcohol within 10 years of the commission of the offense, making the current offense a felony, within the meaning of California Vehicle Code §§ 23626 and 23550.5(a). (*Id.*) The complaint also alleged Klein had suffered five prior convictions for which he was denied probation, within the meaning of Penal Code § 1203(e)(4), two prior convictions for which he had served a prison term, within the meaning of Penal Code §§ 667.5(b) and 668, and two prior "strike" convictions, within the meaning of Penal Code §§ 667(b) through (i), 1170.12, and 668. (*Id.* at 0003-04.) Following a jury trial, Klein was convicted of both counts in the complaint. (*Id.* at 0168.) The prosecutor dismissed one of the prior "strike" convictions, and Klein admitted he had suffered the other convictions alleged in the complaint. (*Id.*) Klein was sentenced to six years in prison. (*Id.* at 0142.)

Klein appealed his conviction to the California Court of Appeal. (Lodgment No. 8.) His attorney filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) and *People v. Wende*, 25 Cal. 3d 436 (1979), which permits an appointed attorney to file a brief which states that after a diligent review of the trial record, there are no non-frivolous appellate issues to raise, and asks the Court of Appeal to independently review the record to determine whether any errors occurred. *Anders*, 386 U.S. at 744-45; *Wende*, 25 Cal. 3d at 441-43.

While Klein's appeal was pending, he filed a petition for writ of habeas corpus California Court of Appeal. (Lodgment No. 9.) The court of appeal then issued an

opinion denying Klein's direct appeal and denying the petition for writ of habeas corpus. (Lodgment No. 10-11.) Following the denial of his habeas corpus petition by the state court of appeal, Klein filed a petition for review in the California Supreme Court. (Lodgment No. 12.) The California Supreme Court denied the petition for review without citation of any authority. (Lodgment 13.)

Klein filed a petition for writ of habeas corpus on February 23, 2017, and an amended petition on March 23, 2017. (ECF No. 1, 4.) Respondent filed an Answer on August 11, 2017, and Klein filed a Traverse on September 11, 2017 (ECF No. 20, 22.)

## IV. **DISCUSSION**

Klein raises six grounds in his petition. In ground one, he argues his due process rights were violated when the prosecutor presented perjured testimony at his trial. (Pet., ECF No. 4 at 6.) In ground two he contends his trial counsel was ineffective for several reasons. (*Id*. at 7.) In ground three, Klein claims he was denied his right to testify in his own defense. (*Id*. at 8.) In ground four, he contends the made false statements during closing argument. (*Id*. at 9.) In ground five, Klein alleges appellate counsel was ineffective. (*Id*. at 10.) Finally, in ground six, Klein asks the Court to review the record to determine whether his constitutional rights were violated. (*Id*. at 11.)

Respondent contends the state court's resolution of Klein's claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Answer, ECF No. 20.)

A. *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

4

28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (*overruled on other grounds by Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at

8.  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id*., the state court decision will not be "contrary to" clearly established federal law.  *Id*.  Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Andrade*, 538 U.S. at 72.

B.  *Analysis*

Klein argues in ground one that the prosecutor presented perjured testimony when Officer Vidana testified about what Klein said during the traffic stop.  He also alleges his trial counsel colluded with the prosecutor to conceal the audio portion of the videotape created by the police vehicle's Mobile Video Audio Recording System (MVARS) of his stop and arrest.  (Pet., ECF No. 4 at 6.)  In ground two, he argues trial counsel was ineffective when he concealed the audio portion of the MVARS videotape, failed to present an expert witness, and failed to renew a pretrial motion to suppress evidence.  (*Id.* at 7.)  Klein contends in ground three that he was denied the right to testify in his own defense.  (*Id.* at 8.)  In ground four, Klein claims the prosecutor misstated his expert's testimony during closing argument.  (*Id.* at 9.)  In ground five, Klein argues appellate counsel was ineffective because he failed to secure and review the MVARS videotape and audio before he submitted a *Wende* brief.  (*Id.* at 10.)  Finally, in ground six, Klein asks this Court to review the record in his case to determine "whether state court proceedings offended Petitioner's fundamental constitutional rights."  (*Id.* at 11.)

1. Perjury and Collusion

Klein claims in ground one that his conviction rests on various false statements Officer Vidana made in his police report and false testimony he gave at the preliminary hearing, the hearing on the motion to suppress evidence, and at the trial. (Pet., ECF No. 4 at 6, 37-44.)  He also contends trial counsel colluded with the prosecutor to prevent the jury from hearing the audio portion of the MVARS videotape of Klein's stop and arrest which would have shown that Vidana's testimony was false.  (*Id.*)  Respondent addresses only Klein's claim that Vidana falsely testified Klein told him he had "a few drinks"

when asked whether he had been drinking during the traffic stop and argues that the audio portion of the videotape taken by the MVARS, which Respondent has provided to the Court, establishes that Klein's answer to Vidana's question as to whether he had been drinking is inaudible. (Answer, ECF No. 20 at 16-17.) Thus, Respondent contends, Klein has provided no evidence to establish Vidana's testimony was false. (*Id.*) Respondent does not address Klein's other claims of perjury or collusion.

Klein raised these claims in the petition for review he filed in the California Supreme Court after his habeas corpus petition was denied by the California Court of Appeal. (Lodgment No. 12.) The state supreme court denied the petition for review without citation of authority. (Lodgment No. 13.) Thus, the last reasoned state court decision addressing these claims is the state appellate court opinion denying Klein's habeas corpus action. *Ylst*, 501 U.S. at 805-06. That court wrote:

> First, Klein's claim the arresting officer testified falsely does not state a prima facie case. Klein lists various statements made at the preliminary hearing, the hearing on the motion to suppress evidence, and at trial, and also statements contained in the police report and made by the prosecutor at trial; but he does not identify any testimony or other evidence that shows any of the listed statements is false. Klein simply alleges the prosecutor "is in possession of direct evidence," namely the MVARS, "which proves [the arresting officer's] testimony is false." Although at trial Klein's counsel played some of the video portion of the MVARS recording of Klein's arrest, counsel played none of the audio portion, and Klein has not provided us with a copy of the recording or a transcript of the audio portion. His bare assertion the MVARS recording proves the arresting officer testified falsely, unsupported by any evidence, is insufficient to state a claim for habeas corpus relief. (*Duvall*, *supra*, 9 Cal.4th at p. 474.)

(Lodgment No. 11 at 2-3.)

Perjury claims are governed by *Napue v. Illinois*, 360 U.S. 264 (1959). "A claim under *Napue* will succeed when '(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material.'" *Jackson v. Brown*, 513 F.3d 1057, 1071-72 (9th Cir. 2008) (citation omitted). If there is "'any reasonable likelihood that the false testimony

could have affected the judgment of the jury'" the conviction must be set aside. *Hayes v. Brown*, 399 F.3d 972, 985 (9th Cir. 2005).

Respondent has provided a CD which contains the audio and video portions of the MVARS videotape. (Lodgment No. 1.) As an initial matter, it is not clear that this Court can consider the audio portion of the MVARS CD because it does not appear it was provided to the state courts on appeal or habeas corpus review. The *Wende* brief filed by counsel does not mention the MVARS videotape, nor does the appellate court's opinion upholding the conviction. (Lodgment Nos. 8, 10.) The appellate court's opinion denying Klein's habeas corpus petition states explicitly that they were not provided the audio portion of the MVARS videotape. (Lodgment No. 11 at 3.) Thus, *Cullen v. Pinholster*, 563 U.S. 170 (2011) may preclude this Court from considering the audio portion of the MVARS CD Respondent has provided. Because Klein may not have been able to provide the audio portion of the MVARS videotape to the state courts, however, this Court concludes it should consider the CD containing the audio and video portions of the MVARS videotape provided by Respondent. *See, e.g., Milke v. Ryan*, 711 F.3d 998, 1007-10 (9th Cir. 2013) (finding an unreasonable determination of the facts where *Brady* evidence was unavailable to the state court through no fault of petitioner); *Gonzalez v. Wong*, 667 F.3d 965, 1013-16 (9th Cir. 2011) (Fletcher, W. concurring) (stating that where "a petitioner's inability to present *Brady* evidence to the state courts is due to the refusal of the state court to allow appropriate discovery, *Pinholster* does not bar federal courts from considering that evidence in the first instance").

The MVARS CD shows the pursuit, stop, and arrest of Klein. After both cars pull to the side of the road, Vidana approaches Klein's car and tells him he was going 85 miles-per-hour in a 65 mile-per-hour zone. (Lodgment No. 1.) Vidana asks Klein for his driver's license, registration, and insurance, and Klein provides some documents. (*Id.*) Vidana asks if Klein has anything more legible, and Klein says, "No." (*Id.*) Klein claims Vidana lied when he stated in his police report and testified at the preliminary hearing, the hearing on the motion to suppress evidence, and at trial that he observed that Klein

was "dripping with sweat" or was "sweating profusely" when stopped. (Pet., ECF No. 4 at 37-38, 40-41, 43.) Klein's face cannot be seen in the video while he is seated in the car. Klein can be seen exiting the car and walking toward Vidana's patrol car, and there does appear to be some sheen on Klein's face, but the quality of the video makes it impossible to discern whether Klein was or was not sweating during the traffic stop.

Klein claims Vidana's statements and testimony that Klein "was trying to figure out where he was," "didn't know where he was at," and that Klein told him he was not sure where he was and "was lost with directions" were false. (Pet., ECF No. 4 at 37, 39-40, 42-44.) In the video, however, Vidana looks at the documents Klein has provided, reads Klein's name aloud, and asks him where he is coming from. Klein answers, "San Diego." (Lodgment No. 1.) When Vidana asks Klein where he is going, Klein responds, "I'm actually kind of lost right now." Vidana asks, "What do you mean?" and Klein says, "I got confused with directions." (*Id.*) Vidana then asks Klein, "Where are you headed?" and Klein says, "Uh . . . Back towards . . . I'm confused about what city I'm in to be honest with you." (*Id.*) At that point, Vidana asks Klein how much alcohol he has had to drink. (*Id.*) Vidana stated in his police report and testified at the preliminary hearing, hearing on the motion to suppress, and at trial that Klein replied, "A few drinks," and Klein claims this was false. (Pet., ECF No. 4 at 37-38, 40, 42-43.) Klein's response, however, is inaudible in the audio portion of the video, and thus the MVARS CD does not establish Vidana's statements and testimony about what Klein said were false. (Lodgment No. 1.)

After Vidana asks Klein how much alcohol he has consumed and Klein gives an inaudible answer, Vidana asks Klein to get out of the car, and Klein complies. (*Id.*) Vidana asks Klein to keep his hands out of his pocket and walk to the curb. Vidana and Klein then walk toward the CHP vehicle and out of sight of the MVARS camera. (*Id.*) Vidana can be heard asking Klein to face the fence and put his hands behind his head and separate his feet. Vidana asks Klein if Klein has anything on him he is "not supposed to have." (*Id.*) Klein says no. Klein claims Vidana's statements and testimony that he

conducted a preliminary frisk for weapons is false, but there is sound that is consistent with Vidana's testimony that he frisked Klein. (Pet., ECF No. 4 at 38, 40.) The MVARS CD does not establish Vidana's statements and testimony about frisking Klein were false.

Klein next contends Vidana falsely stated in his police report and falsely testified at the preliminary hearing, hearing on the motion to suppress evidence, and at trial, that following the frisk, he told Klein to turn around and face him with his heels and toes together and that Klein asked why. Klein also alleges Vidana falsely stated and testified that when Vidana told him he was going to ask him some questions and perform some tests to determine whether Klein was under the influence of alcohol, Klein stepped back, began grasping his hands, and refused to answer any questions or take any tests. (Pet., ECF No. 4 at 37-40, 42.) Neither Klein nor Vidana are visible in the video of the MVARS. The audio portion establishes that after Vidana finished apparently frisking Klein, he gave Klein some direction that is inaudible and Klein responded, "For what?" (Lodgment No. 1.) Vidana is heard explaining he is going to ask Klein some questions and conduct a few tests to determine whether he is under the influence of alcohol. (*Id.*) Klein's response is inaudible, and then Vidana says, "What? You don't want to do anything?" Klein's response is again inaudible, and Vidana says, "Ok." (*Id.*) Vidana can then be heard telling Klein to turn around as he is being arrested for driving under the influence of alcohol. (*Id.*) The audio and video portions of the MVARS CD do not establish Vidana's statements in his police report and his testimony at the preliminary hearing, the hearing on the motion to suppress evidence, and at trial about Klein's refusal to take field sobriety tests were false. The MVARS CD also does not establish that Vidana's statements about Klein's movements just before he was arrested were false because Klein is not visible on the video.[3]

---

[3] In ground one, some of the "perjured testimony" Klein refers to are statements made by the prosecutor during closing argument. Statements made during argument are not testimony. Klein alleges the prosecutor made false statements during closing argument in ground four, and thus the Court addresses all of Klein's allegations about the prosecutor's statements during closing argument in section IV(B)(4).

Klein claims defense counsel colluded with the prosecutor to suppress the audio portion of the MVARS videotape. (Pet., ECF No. 4 at 6.) In support of this claim, he cites to pages 274-276 of the Reporter's Transcript. (*Id.*) That portion of the transcript relates to counsels' discussion with the trial judge regarding what exhibits would be admitted. Defense counsel wanted to submit the video portion only of the MVARS videotape. (Lodgment No. 5, vol. 3 at 275.) There is no evidence in record that defense counsel's decision to present only the video portion of the MVARS videotape was anything other than a tactical decision. The audio portion of the MVARS videotape could only have hurt Klein's chances at trial, as discussed below in section IV(B)(2) of this Report and Recommendation (R&R).

For the foregoing reasons, the state court's denial of Klein's perjury and collusion claims were neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254(d)(1). Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). He is not entitled to relief as to those claims.

2. <u>Ineffective Assistance of Counsel</u>

In ground two, Klein claims trial counsel was ineffective when he: (1) "colluded to conceal direct audio evidence," i.e., the audio portion of the MVARS videotape; (2) failed to present an expert witness at trial who could testify that because of the Intoxilyzer's margin of error and the lack of any information as to Klein's drinking pattern before his arrest, Klein's blood alcohol level was likely between a 0.07 and 0.09 at the time of his arrest; and (3) failed to renew a pretrial motion to suppress evidence based on testimony given by Vidana at trial that conflicted with his preliminary hearing testimony and his testimony at the hearing on the motion to suppress evidence, as well as inaccurate testimony given by Vidana's partner, Officer Soto, at trial. (Pet., ECF No. 4 at 7, 47.) Respondent counters that the state court's denial of these claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law because they are meritless. (Answer, ECF No. 20 at 17-19.)

Klein raised this claim in the petition for review he filed in the California Supreme Court after the habeas corpus petition he filed in the California Court of Appeal was denied.  (Lodgment No. 12.)  The state supreme court denied the petition for review without citation of authority.  (Lodgment No. 13.)  Accordingly, the last reasoned state court decision addressing these claims is the state appellate court's opinion denying Klein's habeas corpus petition.  *Ylst*, 501 U.S. at 805-06.  That court analyzed the claims as follows:

> Second, Klein's claim trial counsel provided constitutionally ineffective assistance also fails to state a prima face case.  Such a claim requires Klein to show that a particular act or omission of counsel was not within the range of reasonable profession judgment and, but for such act or omission, there is a reasonable probability he would have obtained a better outcome at trial.  (*Strickland v. Washington* (1984) 466 U.S. 668, 690, 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 215-218.)  To the extent this claim depends upon the MVARS recording, it fails for the reasons stated in the preceding paragraph. To the extent this claim depends on the failure to present expert testimony about the margin of error for breathalyzer tests, it fails because Klein has presented no declaration from an expert or any other evidence explaining what the expert testimony would have been or how it would have helped Klein's case.  (See *In re Clark* (1993) 5 Cal.4th 750, 766 [habeas corpus petitions alleging counsel failed to present evidence at trial must establish nature and relevance of evidence and show a more favorable outcome would have resulted had the evidence been presented].)  To the extent this claim is based on the failure to renew the suppression motion after the arresting officer and his partner testified at trial, it fails because Klein has not shown the renewed motion "is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence."  (*Kimmelman v. Morrison* (1986) 477 U.S. 365, 375.)  The only evidence Klein ever sought to suppress was the arresting officer's observations *after* he conducted a frisk for weapons and the results of the breathalyzer tests, apparently on the ground that there was no reasonable suspicion to conduct the frisk and any evidence obtained as a result of it had to be excluded.  The arresting officer, however, observed Klein's erratic driving, smelled an alcoholic beverage on him, and saw he was sweating and had red, watery eyes *before* the frisk.  That evidence was sufficient to arrest Klein for suspected drunk driving and then to conduct the breathalyzer tests.  Thus, none of the evidence used to convict Klein would have been excluded even had trial counsel successfully renewed the suppression motion, as Klein

now contends counsel should have done.  In sum, Klein has not shown any error by trial counsel that is "sufficient to undermine confidence in the outcome."  (*Strickland v. Washington*, *supra*, at p. 694.)

(Lodgment No. 11 at 3.)

To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  He must also show he was prejudiced by counsel's errors.  *Id*. at 694.  Prejudice can be demonstrated by a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).  *Strickland* also requires that "[j]udicial scrutiny of counsel's performance . . . be highly deferential."  *Strickland*, 466 U.S. at 689.  There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  *Id*. at 686-87.  The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one.  *Id.* at 697.  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted).  As the Supreme Court has stated, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  *Id.*

a. Failure to Present Audio of the MVARS Videotape (Collusion)

Klein contends defense counsel colluded with the prosecution to conceal the audio portion of the MVARS videotape.  (Pet., ECF No. 4 at 7)  Klein claims the audio portion of the MVARS videotape would have established that Officer Vidana testified falsely

about what occurred during Klein's stop and arrest.  (*Id.*)  As discussed above in section IV(B)(1), the Court has reviewed the audio portion of the MVARS videotape and determined that Vidana's statements in the police report and his testimony at the preliminary hearing, hearing on the motion to suppress evidence, and at the trial were not false.

Moreover, counsel's decision not to present the audio portion of the MVARS videotape does not constitute deficient performance.  *Strickland*, 466 U.S. at 687.  Klein claimed he did not tell Vidana he had "a couple of drinks" in response to Vidana's questioning.  (Pet., ECF No. 4 at 7.)  Klein's response to Vidana was not discernible on the audio portion of the MVARS videotape.  (*See* Lodgment No. 1.)  Counsel could have made a reasonable, strategic decision that playing the audio of the MVARS videotape would not help Klein's defense.  The jury could have come to a different conclusion about whether Klein's response was discernible and possibly determine that Klein did tell Vidana he had "a couple of drinks."  Moreover, in the audio portion of the MVARS videotape, Klein can be heard telling Vidana that he is lost and does not know what city he is in.  (Lodgment No. 1.)  Counsel could have reasonably decided this information would have hurt Klein's defense.  *See Harrington*, 562 U.S. at 105.  For the same reasons, Klein has not established that had counsel introduced the audio portion of the MVARS videotape there is a reasonable probability that "the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  The jury could have decided Klein did, in fact, tell Vidana he had "a couple of drinks," and could have used Klein's statements about being lost and confused as further evidence he was driving under the influence.  *Id.*

The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *Williams*, 529 U.S. at 412-13.  Nor was it based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(2).  Klein is not entitled to relief as to this claim.

/ / /

b. <u>Failure to Call an Expert Witness</u>

Klein claims counsel was ineffective because he did not call an expert witness to testify regarding the Intoxilyzer's accuracy. (Pet., ECF No. 4 at 7.) In support of this argument, he cites to what appears to be a page from the defense trial brief in which defense counsel asserts in a footnote that he has consulted with an expert witness who "opines that, due to the margin of error in the breath machine, Mr. Klein's blood alcohol content was between a 0.07 and a 0.09 *at the time of the breath test*" and that consequently, without any evidence as to what Klein's drinking pattern was before the test, there is no way to establish what Klein's blood alcohol was at the time of driving. (*Id.* at 47.) Defense counsel also states that at the time of trial brief, he had not yet decided whether to call the expert. (*Id.*)

At trial, defense counsel vigorously cross examined the prosecution's expert, Jorge Pena, about the accuracy of Intoxilyzers in general and specifically the Intoxilyzer used in Klein's case, as well as the procedures an officer must complete to insure the blood alcohol reading is accurate. (Lodgment No. 5, vol. 3 at 229-37.) Defense counsel was able to elicit testimony from the prosecution's expert that established there was between a .004 and a .010 margin of error in the Intoxilyzer's results. (*Id.* at 246-47.) In addition, counsel thoroughly questioned Pena about his testimony on direct examination regarding what he believed to be Klein's blood alcohol at the time he was driving. Pena testified that, assuming Klein had fully absorbed the alcohol he had consumed and a specific elimination rate for that alcohol, Klein had a blood alcohol level of 0.10 at the time of driving. (*Id.* at 222.) On cross examination, defense counsel questioned Pena about the assumptions Pena based his opinion on:

> [DEFENSE COUNSEL]: What if you don't have that assumption that the person had been fully absorbed? What if you don't make that assumption?
>
> [MR. PENA]: Well, that plays a huge limitation on the calculation, because the calculation again assumes that the person is in a steady decline of concentration, and that again is .025, .020. If I assume the person is not in

that decline, then it's more difficult to go back and establish where this person would be. What it means is I would need more information as to how many drinks were consumed, what time they finished drinking, the type of drinks that were consumed, so I would need more information to do that type of calculation.

Q. All right. Say you don't get any of that information. You can't assume that they're fully absorbed. You said it would be difficult to make the calculation back at the time of driving; right?

A. Correct.

Q. Why is that?

Q. For the previous explanation. I cannot assume anymore that this person is affected by the quantity of alcohol. I know the person reached peak concentration of alcohol, so I'm not sure if that person is still kind of lingering in that area, so I would have to then make other additional assumptions, if you will, on the type of drinks that were consumed, on how much of that was consumed, and then start opening the window of the possibilities, if you will for the results I gave you.

Instead of a .10, I'd say, that window now opens to a .08 to .10, or depends on the circumstances, from .06 to .10, and that window starts opening more because that information is not there, so again, it's not very useful information at that point.

Q. So you don't have that assumption that it's fully absorbed, you got a problem with your opinion; right? You got a problem coming to an opinion; right?

A. Well, a problem with the calculation that those things needs to take place.

. . . .

Q. Right. And so if you don't know the facts of the case, you don't know the last time they took a drink, how do you assume they were fully absorbed at the time of the .10?

A. Again, it's a Catch-22. If you want a number, I need to assume peak or after the peak. If I don't have that, then you don't get a number. So

the question is, what is the number?  In order to do the number, I need to assume the person is fully absorbed.

Q.  I want to make sure I heard what you said.  If you don't have the number –

A.  No.  The question is:  What is the number?  In order to give you a number, I need to assume the person is fully absorbed.  If the person is not fully absorbed, then there is no number.

(Lodgment No. 5, vol. 3 at 239-44.)

Counsel's failure to call a defense expert does not constitute deficient performance. *Strickland*, 466 U.S. at 687.  Counsel was able to introduce evidence regarding the Intoxilyzer's margin of error and the lack of support for the assumptions upon which the prosecution expert's opinions were based through his cross examination of the prosecution's expert.  Counsel could have reasonably concluded that the information gleaned from his cross examination of the prosecution's expert sufficiently communicated the information a defense expert would have, and that presenting this information through the prosecution's expert and not a defense expert bolstered the credibility of the information in the jury's mind.  Klein has also not established how further evidence of the Intoxilyzer's margin of error and attacks on the assumptions upon which the prosecution expert based his opinion would have changed the outcome of his case. *Id.* at 694.

The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *Williams*, 529 U.S. at 412-13.  Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).  Klein is not entitled to relief as to this claim.

c.  <u>Failure to Renew the Motion to Suppress Evidence</u>

Klein also faults counsel for failing to renew the motion to suppress evidence at trial.  (Pet., ECF No. 4 at 7.)  In counsel's original motion, he sought to suppress any evidence obtained following an illegal frisk conducted by Vidana.  (Lodgment No. 5, vol. 1.)  Klein claims Vidana's trial testimony about how much he was sweating when he was

stopped was different than his testimony at the preliminary hearing and at the hearing on the motion to suppress evidence, and that counsel should have renewed his motion to suppress on that ground.  (Pet., ECF No. 4 at 7.)

At the preliminary hearing, Vidana testified Klein was "sweating profusely from the face," and that "actual drops of sweat [were] coming down his face."  (Lodgment No. 4 at 6, 23.)  At the hearing on the pretrial motion to suppress, Vidana testified that Klein's face was "dripping sweat from his left side."  (Lodgment No. 5, vol. 1 at 5-6.)  At trial, Vidana testified Klein was "dripping sweat from the left side of his face," that the sweat was "mainly moisture," but that "[h]e had a drop probably at the height of his temple, which was slowly coming down."  (Lodgment No. 5, vol. 3 at 92-93.)  Although counsel admitted at the *Marsden* hearing that he did not know he could have renewed the motion at trial, Klein has not established he was prejudiced by counsel's failure to do so. *Strickland*, 466 U.S. at 694.  There is no appreciable difference between Vidana's testimony about Klein's sweaty appearance at the preliminary hearing, the hearing on the motion to suppress evidence, and at trial, and thus there is no reasonable likelihood Klein would have prevailed on a renewed motion to suppress based on that ground.  *Id.*

Moreover, the focus of the motion to suppress was the illegality of the frisk Vidana performed on Klein and the evidence Vidana gained as a result of that illegal frisk. (Lodgment No. 5, vol. 1 at 40-42.)  As the state trial and appellate courts noted, Vidana observed Klein speeding, watched Klein's somewhat erratic driving, smelled alcohol when he spoke to Klein during the traffic stop, observed Klein's red, watery eyes and sweaty appearance, saw Klein avoiding eye contact, heard Klein admit he was confused about where he was, and heard Klein admit he "had a couple drinks" before he had Klein get out of the car and frisked him.  (*Id.* at 4-8.)  Thus, even if counsel had renewed the motion to suppress, there is no reasonable likelihood it would have been granted because Vidana had sufficient information to arrest Klein for suspected driving under the influence before he frisked Klein. *Atwater v. City of Lago Vista*, 532 U.S. 318, 355 (2001) ("If an officer has probable cause to believe that an individual has committed even

18

a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender").

Klein also alleges that counsel should have renewed the motion to suppress based on testimony by Officer Soto, Vidana's partner, at trial. (Pet., ECF No. 4 at 7.) Klein notes that during cross examination, Soto testified he was standing next to Vidana while Vidana was talking to Klein and could smell "a little bit" of an odor of alcohol. (Lodgment No. 5, vol. 3 at 178.) Counsel was then able to get Soto to admit that he had not smelled alcohol. (*Id.* at 180.) Klein claims counsel should have renewed the motion to suppress based on Soto's contradictory testimony because Soto's testimony "tainted" Vidana's. (Pet., ECF No. 4 at 7.) It is not clear to the Court how Soto's testimony would have strengthened the basis for Klein's motion to suppress, particularly since Soto was not involved in questioning or frisking Klein. Klein appears to suggest that counsel should had argued that if Soto was untruthful, Vidana was untruthful. But there is no support in the record for this assertion, and counsel cannot be faulted for failing to renew the motion to suppress on that ground. *Strickland*, 466 U.S. at 687. Nor has Klein established that the outcome of his trial would have been different had counsel done so. *Id.* at 694.

The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13. Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Klein is not entitled to relief as to this claim.

### 3. Denial of Klein's Right to Testify

In ground three, Klein contends he was denied his right to testify. (Pet., ECF No. 4 at 8.) Klein contends his attorney knew he wanted to testify, but when he asked when he would be able to, his attorney told him it was too late. (Pet., ECF No. 4 at 8.) Klein also states, "The record is silent: at no time did Petitioner waive or give up his right to testify." (Id.) Respondent argues the state court's denial of this claim was neither

/ / /

contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Answer, ECF No. 20 at 24-25.)

Klein raised this claim in the petition for review he filed in the California Supreme Court after his habeas corpus petition was denied by the California Court of Appeal. (Lodgment No. 12.)  The California Supreme Court denied the petition for review without citation of authority.  (Lodgment No. 13.)  Accordingly, this Court must "look through" to the state appellate court's denial of the claim as the basis for its analysis. *Ylst*, 501 U.S. at 805-06.  That court analyzed the claim as follows:

> Third, Klein's claim he was denied his right to testify at trial fails to state a prima facie case.  "[W]hile it is true that the right to testify on one's own behalf is a fundamental right, that right must be 'timely' asserted." (*People v. Guillen* (1974) 37 Cal.App.3d 976, 984.)  Although Klein alleges, "At no time did [he] waive or give up his right to testify," he does not allege he informed his counsel or the court that he wanted to testify at any time before he was found guilty.  "When the record fails to disclose a timely and adequate demand to testify, 'a defendant may not await the outcome of a trial and then seek reversal based on his claim that despite expressing to counsel his desire to testify, he was deprived of that opportunity."  (*People v. Alcala*, (1992) 4 Cal.4th 742, 805-806.)

(Lodgment No. 11 at 3-4.)

"[W]aiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so." *United States v. Joelson*, 7 F.3d 174, 178 (9th Cir. 1993).  The Ninth Circuit has discussed this principle as follows:

> The right of an accused to testify in his own defense is well established, and is a "constitutional right of fundamental dimension. *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993).  The right stems from several provisions of the Constitution, including the Fourteenth Amendment's Due Process Clause, the Sixth Amendment's Compulsory Process Clause, and the Fifth Amendment's privilege against self-incrimination. *Rock*, 483 U.S. at 51-52, 107 S.Ct. 2704.  The right is personal, and "may only be relinquished by the defendant, and the defendant's relinquishment of the right must be knowing and intentional." *Joelson*, 7 F.3d at 177.

However, while waiver of the right to testify must be knowing and voluntary, it need not be explicit. *See id*. A defendant is "presumed to assent to his attorney's tactical decision not to have him testify." *Id*. The district court has no duty to affirmatively inform defendants of their right to testify, or to inquire whether they wish to exercise that right. *United States v. Edwards*, 897 F.2d 445, 447 (9th Cir. 1990); *United States v. Martinez*, 883 F.2d 750, 760 (9th Cir. 1989), *vacated on other grounds*, 928 F.2d 1470 (9th Cir.1991). . . . A defendant who wants to reject his attorney's advice and take the stand may do so "by insisting on testifying, speaking to the court, or discharging his lawyer." *Id*. When a defendant remains "silent in the face of his attorney's decision not to call him as a witness," he waives the right to testify. *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993).

*Id.* at 1094-95.

There is no evidence in the record that Klein insisted on testifying, spoke to the court about his desire to testify, or discharged his lawyer for refusing to permit him to testify. *See Joelson*, 7 F.3d at 177. Accordingly, it is presumed he assented to his attorney's tactical decision that he not testify. *Id*. Moreover, at the *Marsden* hearing, after Klein told the judge counsel ignored his desire to testify, counsel stated:

[DEFENSE COUNSEL]: With regard to denying him the right to testify, that's just plain not the truth. He and I spoke about what his testimony[] might be on at least a couple of occasions before the trial, and I'm going to leave his answers to me off the record at the moment, unless it comes back up an another time. But I never denied him the right to testify. That was his decision, and his decision alone, that he made sitting here at this table. There was never a stop. I never told him you can't testify, you shouldn't testify. I'm sure I said something along the lines of I don't think we need you to testify, but never don't testify or you can't testify, nothing along those lines.

(Lodgment No. 5, vol. 5A at 343.)

In denying the *Marsden* motion, the trial judge noted that he was aware of some of the discussions surrounding Klein's decision to testify:

[THE COURT]: The issue of the right to testify, when I heard Mr. Klein's comments was for me the most problematic issue that he raised. I

21

have to make my decision based on a couple things, and that would be; one, what I recall with regard to the trial, and really, it's threefold. We had extensive discussions in chambers about – off the record, but discussions with regard to what his abysmal criminal record that Mr. Klein had, and the various pitfalls that he would have faced had he even marginally tripped up in his direct examination as to the facts surrounding this particular case.

Mr. Thompson was acutely aware of Mr. Klein's record. He was also aware of, and mentioned what this Court's policy was with regard to priors, and as I indicated, I think it was a tactical decision on his part, based upon the Court's statements that Mr. Klein testifying in the case could have opened a myriad of horrific doors for the defense.

I am sure, based upon my experience with Mr. Thompson, that those matters were discussed with Mr. Klein at the time the defense case would have been presented. There was nothing to indicate to the Court that there was any controversy or disagreement as to strategy with regard to Mr. Klein's right to testify. I just didn't see anything to suggest that.

(*Id.* at 345-46.)

The state court record supports a conclusion that Klein waived his right to testify. Accordingly, the state court's denial of this claim is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13. Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Klein is not entitled to relief as to this claim.

4. <u>Prosecutorial Misconduct During Closing Argument</u>

In ground four, Klein contends the prosecutor falsely represented the prosecution's expert testimony during closing argument. (Pet., ECF No. 4 at 9.) Specifically, Klein points to a portion of closing argument during which the prosecutor told the jury that the Intoxilyzer was accurate to within more than the .01 the defense claimed, and that it was accurate to within .002. (*Id.* at 34-36.) Respondent argues the prosecutor's argument was proper and accurately reflected the expert's testimony. (Answer, ECF No. 20 at 26-27.)

/ / /

17cv0380 JAH (PCL)

Klein raised this claim in the petition for review he filed in the California Supreme Court following the denial of his habeas corpus petition in the California Court of Appeal.  (Lodgment No. 12.)  The state supreme court denied the petition for review without citation of authority.  (Lodgment No. 13.)  Accordingly, the last reasoned state court decision addressing this claim is the California Court of Appeal's opinion denying Klein's habeas corpus petition.  *Ylst*, 501 U.S. at 805-06.  That court wrote:

> Fourth, Klein's claim the prosecution's expert gave false testimony about the margin of error for breathalyzer test results and the prosecutor relied on the testimony in closing argument does not state a prima facie case for habeas corpus relief.  Klein's naked assertion, "A plethora of landmark DUI cases have acknowledged for decades the margin of error breathalyzers posses[s]," is insufficient to establish prejudicial error warranting vacatur of the judgment.  (*Duvall*, *supra*, 9 Cal.4th at p. 474.)

(Lodgment No. 11 at 4.)

Defense counsel argued in closing that the reliability of the Intoxilyzer used in Klein's case was in question.  (Lodgment No. 5, vol. 4 at 308.)  On rebuttal the prosecutor argued as follows:

> [THE PROSECUTOR]:  You got a breath test that he's over an .08 on both readings.  And I know Mr. Thompson wants you to disregard the tests and talking about this .002 and this so-called margin of error, but, you know, take a look at the actual exhibit.  When the machine was checked the morning of the test, they put in a sample that is 110, and it read 108.  It actually under-measured it, underestimated the actual level, and so it was erring in Mr. Klein's favor on the morning of the test.

> And there is no margin of error of .1.  The expert told you that margin of error, that's really not the correct term.  What the .01 means is that the machine is tested and it's made sure that it's accurate to at least .01, because if it's not accurate to at least .01, they're going to recalibrate it to comply with the law, and so it's accurate to at least .01, and in fact, it's accurate to more than .01.

> You see from the results, the accuracy checks in this case, that it was accurate to about .002, and that's why you have .091, 087.  .091 minus .002 is .089.  It's plus or minus .002, not just minus, like the defense wants you to believe.

> And so you got a machine that's extremely accurate. It's accurate to way more than .01. You got two readings that are at .091 and .087, and they're pretty close in time to driving. They're about 50 minutes after.

(*Id.* at 315-16.)

The prosecutor's argument was an accurate response to defense counsel's argument calling into question the accuracy of the Intoxilyzer results. The prosecution's expert, Jorge Pena, testified on direct examination and on cross-examination that Intoxilyzers are required by law to be accurate to within .010. (Lodgment No. 5, vol. 3 at 216, 246.) An accuracy check was performed on the Intoxilyzer used in Klein's case on December 9, 2015. (Id.) The Intoxilyzer was found to be accurate to within .001. (Id.) Klein was arrested on December 21, 2015 at approximately 1:00 a.m. (Id. at 84, 101.) A second accuracy test was performed on the Intoxilyzer on December 21, 2105 at 5:00 a.m. (Id. at 217.) That test indicated the Intoxilyzer was accurate to within .002. (Id.) Thus, the prosecutor's statement that the accuracy checks before and after Klein's was tested established the Intoxilyzer was accurate to about .002, more than the legally required 0.01.

In ground one, Klein claims two other statements by the prosecutor during closing argument were false: (1) Klein demonstrated signs of mental impairment and difficulty processing information when he told Vidana he was confused about where he was and where he was going; and (2) even if the defense argument that Klein was experiencing a rising blood alcohol at the time he took the Intoxilyzer test was correct, Klein's blood alcohol was still over the legal limit of 0.08. (Pet., ECF No. 4 at 43-44.)

As to the prosecutor's statement about Klein's demonstrated mental impairment, Pena testified that alcohol impairs mental ability, including information processing. When asked if difficulty reading signs and understanding where a driver is and where he is going was consistent with alcohol impairment, the expert responded that it was. (Lodgment No. 5, vol. 3 at 198-99.)

/ / /

As to the prosecutor's argument about the rising blood alcohol defense, Klein complains about the following statements by the prosecutor during closing argument:

> [THE PROSECUTOR]: He's talking about, oh, we don't know how long he's been driving, if he drank one minute, two minutes, three minutes before the stop. We know that's not the case. There is no alcohol in the car. He's not drinking as he's driving. And in fact, you know, the officer sees him driving for about two minutes.
>
> What he's trying to tell you is that the defendant is basically the product of the most unfortunate luck in the world. He's trying to tell you that the defendant had this last drink and then immediately started driving after having a drink, and that even after driving, he still was stopped somewhere here. Not anywhere here. And that he happened to be an .07, oh my God, he was a .07 at the time he was driving, but he's a .09 when he's tested. It's not reasonable. It didn't happen that way.
>
> And even if you took out one drink, an entire drink – I mean, who slams an entire drink before driving? I mean, nobody does that. But even if he did that, even if you take out an entire drink and assume an entire drink is sitting in his stomach waiting to be absorbed, what does that bring you to. .091 and you take out one drink, one drink for him is .16, you're still over – you're – but then he actually eliminated half a drink during that time, so that brings it back to .10. He's still over an .08. You take an entire drink out, he's still over an .08. . . .

(Lodgment No. 5, vol. 4 at 316-17.)

Pena testified that for a man of Klein's weight, every standard drink would raise his blood alcohol level by .016. (Lodgment No. 5, vol. 3 at 195.) He also testified that the elimination rate for alcohol in the body is between .015 and .020 per hour. (*Id.* at 196, 222.) For a male of Klein's weight, Klein would have had about five and half standard drinks in his system to have had a blood alcohol level of between .087 and .091 at the time of the breath test at about 1:30 a.m. (*Id.*) Pena also testified that given the breath test results, a male of Klein's weight would have had a blood alcohol of about 0.10 at the time Klein was driving. (*Id.*) To reach that blood alcohol level, Klein would have had to have had between six and six and a half standard drinks. (*Id.* at 222-23.) The prosecutor stated in closing argument that Klein's blood alcohol would have been over

.08 at the time of driving even if Klein was still absorbing alcohol and did not reach his peak alcohol level until the time of the breath test. (Lodgment No. 5, vol. 4 at 317.) This is because between the time of driving and the time of the breath test, Klein would have absorbed one drink, .016, but also eliminated at least half of a drink, or between .007 and .010. Klein was driving at 12:40 and he took the breath test at about 1:30. Thus, assuming Klein was still absorbing alcohol at the time he was driving, his blood alcohol was rising .016 but also falling between .007 and .010 from the time of driving (12:40 a.m.) until the time of the breath test (1:30 a.m.). Thus, his blood alcohol level, even if the defense theory was true, would have been between .097 and .093 at the time of driving. And, as the prosecutor noted, even if one full drink was eliminated from the equation, Klein's blood alcohol would still have been over .08 as it would have been between .083 and .087.

The state court record establishes the prosecutor's statements during rebuttal argument correctly characterized the expert's opinion. Accordingly, the state court's denial of this claim is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13. Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Klein is not entitled to relief as to this claim.

### 5. Ineffective Assistance of Appellate Counsel

Klein contends in ground five that his appellate counsel was ineffective because he did not secure and review the audio portion of the MVARS videotape before he filed a *Wende* brief. (Pet., ECF No. 4 at 10.) Respondent argues Klein has not demonstrated he was prejudiced by any errors made by appellate counsel because Klein raised this claim in the habeas corpus petition he filed in the California Court of Appeal, which was denied. (Answer, ECF No. 10 at 19-21.)

Klein raised this claim in the petition for review he filed in California Supreme Court after his petition for writ of habeas corpus was denied by the state appellate court. (Lodgment No. 12.) The California Supreme Court denied the petition for review

without citation of authority.  (Lodgment No. 13.)  The state appellate court's opinion

denying Klein's petition for writ of habeas corpus is therefore the last reasoned state

court decision addressing the claim.  That court denied the claim as follows:

> Fifth, and finally, Klein has not stated a prima facie claim of constitutionally ineffective assistance of appellate counsel.  Klein complains he "diligently informed counsel of the matters contained within [this] habeas corpus writ [petition]," but counsel "expedited a '*Wende* brief' and informed [Klein] he may file a supplemental brief."  Klein, however, has not met his burden to identify any "crucial assignments of error, which arguably might have resulted in a reversal," but which counsel failed to raise on appeal.  (*In re Smith* (1970) 3 Cal.3d 192, 202.)  As discussed above, the claims he asserts in this habeas corpus proceeding have no merit.  The right to the effective assistance of appellate counsel does not include the right to have counsel press frivolous or meritless arguments (*Smith v. Robbins* (2000) 528 U.S. 259, 278; *People v. Shelburne* (1980) 104 Cal.App.3d 737, 744), even if the client wants counsel to press them (*Redante v. Yockelson* (2003) 112 Cal.App.4th 1351, 1357).  In any event, we determined on Klein's appeal that appointed counsel had competently represented Klein on that appeal.

(Lodgment No. 11 at 4.)

The *Strickland* test applies to ineffective assistance of appellate counsel claims.

*Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535-

36 (1986)).  A petitioner must first show that his appellate counsel's performance fell

below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  He must

then establish he was prejudiced by counsel's errors.  *Id*. at 694.  To establish prejudice, a

petitioner must demonstrate that he would have prevailed on appeal absent counsel's

errors.  *Smith*, 528 U.S. at 285.  Appellate counsel is not required to raise frivolous or

meritless claims on appeal.  *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012).

As the state court correctly noted, Klein has not established he was prejudiced by

counsel's actions because he has not established he would have prevailed on appeal had

counsel secured and reviewed the audio portion of the MVARS videotape.  *Smith*, 528

U.S. at 285.  As discussed above in section IV(B)(1) and (2), there is nothing on the

audio portion of the MVARS videotape that would have assisted Klein's defense or

established that Vidana's testimony was untruthful. Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13. Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Klein is not entitled to relief as to this claim.

### 6. Review of State Court Proceedings

In his final claim, Klein asks the Court to "review the record for determining whether state court proceedings offended Petitioner's constitutional rights." (Pet., ECF No. 4 at 11.) Rule 2(c) of the Rules Governing Section 2254 Cases states that the petition "shall set forth in summary form the facts supporting each of the grounds . . . specified [in the petition]." Rule 2(c), 28 U.S.C. foll. § 2254; *see also Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970) (trial court's dismissal of federal habeas proceeding affirmed where petitioner made conclusory allegations instead of factual allegations showing that he was entitled to relief). In order to satisfy Rule 2(c), Petitioner must point to a "real possibility of constitutional error." *Cf. Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (internal quotation marks omitted). While courts should liberally interpret pro se pleadings with leniency and understanding, this should not place on the reviewing court the entire onus of ferreting out grounds for relief. *See Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001). This Court cannot conduct an independent review of the record to determine grounds for relief.

To the extent Klein raises specific claims in this ground, as Respondent correctly notes, they are unexhausted; they are also meritless. Klein claims the transcript for a hearing which occurred on April 4, 2016 was removed. (Pet., ECF No. 20 at 11.) This is incorrect, as Respondent lodged a copy of the transcript of that hearing. (*See* Lodgment No. 6.) April 4, 2016 was the date set for Klein's sentencing. At the hearing, defense counsel asked for a continuance because he wanted to research two issues that could form the basis for a new trial: (1) whether he should have objected to the prosecutor arguing that the jury could infer Klein was under the influence if he had a blood alcohol content

of .08 at the time of driving; and (2) whether he should have renewed the motion to suppress evidence based on discrepancies in Vidana's testimony between the hearing on the motion to suppress and trial. (*Id.* at 2-3.) Klein claims the judge "became irate and told counsel this was 'ineffective assistance of counsel.'" (Pet., ECF No. 20 at 11.) The transcript of the hearing does not reflect this. After being informed of the possible grounds for a motion for a new trial, the judge noted that the question whether counsel should have objected to the prosecutor's argument could be resolved on appeal. (Lodgment No. 6 at 2.) Counsel agreed, but noted that "the other thing," i.e., whether counsel should have renewed his motion to suppress, "need[ed] to be resolved before sentencing happens." (*Id.* at 2-3.) The judge responded, "That is an alleged ineffective assistance of counsel?," to which counsel replied, "I don't know if it is that. It might just be that I renew the motion to suppress evidence." (*Id.* at 3.) The judge then agreed to continue the sentencing hearing until May 10, 2016. (*Id.* at 3.)

Klein alleges that on May 10, 2016, "no motions [were] heard, not even the pro-per motion Petitioner filed requesting an additional motion to suppress." (Pet., ECF No. 20 at 11.) The transcript of the May 10, 2016 hearing reveal the judge stated the following:

> [THE COURT]: The matter is on for sentencing today. Mr. Klein has filed a *Marsden* motion, and it looks like an addendum. It's entitled a motion to suppress evidence, but it would appear to be an addendum to the *Marsden*, and that being a basis as to why he wants the *Marsden*, but I'll let him explain that.

(Lodgment No. 5, vol. 5 at 336.)

The court went on to hold a *Marsden* hearing, during which Klein complained about, among other things, counsel's failure to renew the motion to suppress. (*Id.* at 337-38.) Counsel responded that he believed "the reviewing court still had plenty of factors to deny to motion to suppress evidence," including "the admission of consuming alcoholic beverages, . . . the speeding, and . . . the admission of being lost . . . ." (*Id.* at 342.) The judge denied the *Marsden* motion, implicitly deciding that a new motion to suppress would have been futile. (*Id.* at 344-47.)

Klein also alleges the verdict forms were "withheld" by the trial court and that they were "doctored" to remove references to the permissive inference Klein alleges the prosecutor improperly argued during closing argument. Although the verdict forms were part of the augmented record on appeal and not the original record, there is no evidence they were withheld or altered. (Lodgment No. 5, vol. 2 at 58.)

### 7. Evidentiary Hearing

Klein asks this Court to hold an evidentiary hearing to consider the MVARS videotape. (Pet., ECF No. 4 at 15.) Evidentiary hearings in § 2254 cases are governed by AEDPA, which "substantially restricts the district court's discretion to grant an evidentiary hearing." *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999). The provisions of 28 U.S.C. § 2254(e)(2) control this decision:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2) (West 2006).

In deciding whether to grant an evidentiary hearing, the court must first "'determine whether a factual basis exists in the record to support the petitioner's claim.'" *Insyxiengmay v. Morgan*, 403 F.3d 657, 669 (9th Cir. 2005) (quoting *Baja*, 187

30

F.3d at 1078).  If not, the court must "'ascertain whether the petitioner has "failed to develop the factual basis of a claim in State court."'"  *Id*. at 670 (quoting *Baja*, 187 F.3d at 1078.)  A failure to develop the factual basis of a claim in state court implies some "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  *See Williams*, 529 U.S. at 432.  The Supreme Court has said that "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."  *Id*. at 437.

Pursuant to *Cullen v. Pinholster*, 563 U.S. 170 (2011), Klein is limited to the facts presented to the state court.  In *Pinholster*, the Supreme Court held that where habeas claims have been decided on their merits in state court, a federal court's review must be confined to the record that was before the state court.  563 U.S. at 181-82.  Klein can only proceed to develop additional evidence in federal court if either § 2254(d)(1) or (d)(2) are first satisfied.  *See Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) (stating that "an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief[]" (citing *Pinholster*, 563 U.S. at 203 n.20)).  For all the reasons discussed above, Klein is not entitled to federal habeas relief.  Accordingly, Klein's request for an evidentiary hearing is **DENIED**.

## IV.  <u>CONCLUSION</u>

The Court submits this Report and Recommendation to United States District Judge John A. Houston under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

**IT IS HEREBY RECOMMENDED** that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition for Writ of Habeas Corpus.

**IT IS ORDERED** that no later than November 29, 2017 any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with

the Court and served on all parties no later than December 15, 2017. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**


**DATED: November 9, 2017**


Peter C. Lewis
United States Magistrate Judge

17cv0380 JAH (PCL)